**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| PAUL ALEXANDER | * | |
| *Petitioner*, | * | |
| v. | * | |
| | | Criminal Action No. RDB-19-0020 |
| UNITED STATES OF AMERICA, | * | Civil Action No. RDB-22-2577 |
| *Respondent*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

After a seven-day trial, a jury found *pro se* Petitioner Paul Alexander ("Petitioner" or "Alexander") guilty of (i) Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl in violation of 21 U.S.C. §§ 841, 846 (Count I); (ii) Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 841 (Counts II and III); (iii) Possession of a Firearm in Relation to a Drug Trafficking Crime, in violation of 21 U.S.C. § 924(c) (Count IV); and (iv) Possession of a Firearm by a Prohibited Person, in violation of 18 U.S.C. § 922(g)(1) (Count V). (Jury Verdict, ECF No. 94; Superseding Indictment, ECF No. 26.) On January 16, 2020, this Court sentenced Alexander to a total term of 420 months (35 years) of imprisonment, with credit for time served in federal custody since January 3, 2019, followed by a five-year term of supervised release.[1] (Judgment, ECF No. 105.) Subsequently, the United States Court of Appeals for the Fourth Circuit affirmed Alexander's

---

[1] This Court sentenced Petitioner to 360 months (30 years) of imprisonment for Count I; 360 months of imprisonment for Count II; 360 months of imprisonment for Count III; 60 months (5 years) of imprisonment for Count IV; and 120 months (10 years) of imprisonment for Count V. (ECF No. 105.) This Court ordered the sentences for Counts I, II, III, and V to run concurrently and the sentence for Count IV to run consecutively, leading to a total sentence of 420 months (35 years) of imprisonment. (*Id.*)

sentence. *United States v. Alexander*, 834 F. App'x 825 (4th Cir. 2021) (per curiam), *cert denied*, 142 S. Ct. 351 (2021); (ECF No. 128).

Now pending before this Court are three motions filed *pro se* by Petitioner: (1) a Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 ("Motion to Vacate" or "§ 2255 Motion") (ECF No. 133); (2) a Motion for Leave to Amend his Motion to Vacate (ECF No. 138); and (3) a Motion to Extend Time (ECF No. 152). In his Motion to Vacate, Petitioner advances a myriad of arguments, including that his attorney rendered ineffective assistance of counsel, his conviction under the Controlled Substances Act ("CSA") was invalid because the CSA exceeds Congress's constitutional authority, and his prosecution violated the Ninth and Tenth Amendments. (ECF No. 133.) In his subsequent Motion for Leave to Amend, Petitioner adds that his conviction under 18 U.S.C. § 922(g) is unconstitutional after the Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022). (ECF No. 138.) This argument is unavailing. Although the Fourth Circuit has not yet considered the constitutionality of § 922(g) after *Bruen*, three of the four circuits to address the issue comfortably held that § 922(g) remains constitutional because *Bruen*, by its own language, applies only to law-abiding citizens. *Vincent v. Garland*, 80 F.4th 1197, 1201–1202 (10th Cir. 2023); *United States v. Hickox*, No. 22-50365, 2023 WL 3075054, at *1 (5th Cir. Apr. 25, 2023); *United States v. Jackson*, 69 F.4th 495, 505 (8th Cir. 2023). The only circuit to hold that *Bruen* invalidated § 922(g) expressly distinguished the narrow, as-applied challenge at issue in that case because the underlying felony there involved a state-law conviction for making false statements to obtain food stamps. *Range v. Att'y Gen. United States of America*, 69 F.4th 96, 98, 103, 106 (3d Cir. 2023); *id.* at 112 (Ambro, J., concurring) (deeming the underlying felony

a "small time offense" that did not threaten society). Finally, in his Motion to Extend Time, Petitioner asserts that he awaits research that he needs to complete his reply. (ECF No. 152.) The Government opposes Petitioner's § 2255 Motion, (ECF No. 149), but has not responded to Petitioner's Motion to Extend Time. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons stated herein Petitioner's Motion for Leave to Amend (ECF No. 138) is **GRANTED**; [2] the Motion to Extend Time (ECF No. 152) is **DENIED AS MOOT**; and the Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 133) is **DENIED**.

## BACKGROUND

### I.     The Offenses of Conviction

Throughout 2018, Petitioner Paul Alexander led a drug trafficking organization that operated in and around Baltimore, Maryland. On October 1, 2019, after a seven-day trial, a jury found Alexander guilty of one count of Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl in violation of 21 U.S.C. §§ 841, 846; two counts of Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 841; one count of Possession of a Firearm in Relation to a Drug Trafficking Crime in violation of 21 U.S.C. § 846; and one count of Possession of a Firearm by a Prohibited Person in violation of 18 U.S.C. § 922(g)(1) in relation to Petitioner's drug trafficking activities. (Jury Verdict, ECF No.

---

[2] This Court will supplement Petitioner's Motion to Vacate with the additional arguments raised in his supplemental filing and will address them in disposing of the pending Motion to Vacate (ECF No. 133). Additionally, on June 20, 2023, Petitioner filed a Reply to the Government's Response in Opposition to his Motion to Vacate (ECF No. 153). This Court will incorporate the arguments raised in Petitioner's Reply to the Government's Response in Opposition, (ECF No. 153), in its discussion of the pending Motion to Vacate (ECF No. 133).

94.) During the trial, the Government called twenty witnesses and presented 113 exhibits. (Gov't Ex. List, ECF No. 68.) A summary of the evidence adduced at trial follows.

Between April 26, 2018, and January 2, 2019, Drug Enforcement Agency ("DEA") agents surveilled Petitioner as he engaged in suspected drug trafficking activity. (Trial Tr., ECF No. 121 at 27:9–19, 30:23–25.) During this surveillance, DEA agents collaborated with the Baltimore County Police Department ("BCPD"), which twice sent officers to conduct routine traffic stops of Petitioner's vehicle. (*Id.* at 52:18–25; 53:1–10; 82:24-25, 83–84:1–7.) During both stops, K-9s in the BCPD's narcotics detection unit alerted on Petitioners vehicle, leading officers to search the vehicle. (*Id.* at 60:10–22; 90:12–22.) In both searches, officers uncovered thousands of dollars in cash, but no drugs were recovered inside the vehicle. (*Id.* at 61:1–24; 96:16–25.)

On November 6, 2018, several months after the second vehicle search, DEA agents observed Petitioner deliver two kilograms of heroin to an individual named Derrell Dixon ("Dixon"). (ECF No. 123 at 144:7–24; 138:1–21; 151:23–25.) Dixon, who later testified at trial, sold that fentanyl for $136,000 and returned $134,000 to Petitioner. (*Id.* at 193:4–24; 194:1–6.)

On January 2, 2019, DEA agents executed federal search warrants of Petitioner's two apartments and arrested Petitioner. (*Id.* at 27:15.) The searches of Petitioner's apartments yielded an insurance card for the car that agents had seen Petitioner drive throughout the investigation; the key to a Honda vehicle; $1,089,521.90 in cash; a Glock Model 23 handgun; and a magazine containing ammunition for the handgun. (*Id.* at 27:2–18; 22:1–20; 41:1–9; 34:8–10, 21–22; 15:11–21.) Agents used this evidence to obtain additional warrants to search

4

Petitioner's two vehicles and the residence of Petitioner's girlfriend on January 3, 2019. (*Id.* at 29:18–25; 33:14–24.) During these searches, agents discovered eight kilograms of fentanyl packaged in four heat-sealed bags inside the Honda Accord and $246,645 in cash inside the residence of Petitioner's girlfriend. (*Id.* at 29:18–25; 31:7–13; 39:21–23; 37:3; 35:5.)

## II.     Suppression Hearing

Before trial, Petitioner filed a Motion to Suppress evidence regarding the traffic stops and subsequent searches that BCPD officers conducted of his car. (ECF No. 20.) After a hearing (the "Suppression Hearing"), this Court denied Petitioner's Motion to Suppress. (ECF No. 45.) Because Petitioner challenges the effectiveness of his counsel during the suppression hearing, a summary of the testimony and arguments adduced at the hearing is set forth below.

On or about April 6, 2018, DEA agents began surveilling Petitioner after they watched him interact with an individual named Miles Bellamy ("Bellamy"). (ECF No. 118 at 43:21–25; 44:1–25.) After surveilling Petitioner for several weeks, on April 26, 2018, DEA agents requested that officers from the BCPD conduct a traffic stop of Petitioner's vehicle. (*Id.* at 49:7–25; 53:8–25; 54:1; ECF No. 119 at 18:10–24.) In response to the DEA agents' request, a BCPD police offer stopped the vehicle for driving with suspected illegal window tints and a partially obscured license plate. (ECF No. 119 at 20:2–8.) At the time of the stop, Petitioner was the passenger in the vehicle and another man was driving. (*Id.* at 20:11-16.) The BCPD officer collected the license, registration, and insurance of the driver of the vehicle and, after Petitioner claimed not to have an identification card with him, asked Petitioner for his name and date of birth. (*Id.* at 20:11–25.) Petitioner initially identified himself to the officer as David

Paul Hayes. (*Id.* at 21:1–2.) The BCPD officer then returned to his vehicle to run the driver's information and search Petitioner's name in a BCPD database. (*Id.* at 23:11–15.)

The officer could not initially identify anyone named David Paul Hayes in the database and had to return to the vehicle to ask Petitioner for another name before he was able to identify Petitioner as Paul Alexander in the BCPD database. (*Id.* at 23:23–24:6.) While the BCPD officer attempted to identify the occupants of the vehicle, a narcotics detection unit arrived at the scene of the stop. (*Id.* at 23:21–25; 24:1–25; 32:3–16.) After a narcotics detection K-9 positively alerted on the vehicle, the BCPD officers searched the car and found a bag containing cash in heat-sealed bags. (*Id.* at 32:6–16.) The officers did not seize the bag of cash or anything else from the vehicle. (*Id.* at 34:5–10.)

About three weeks later, DEA agents again observed Petitioner drive to a parking lot, meet with Bellamy, and drive away. (*Id.* at 79:19–25.) After observing Petitioner drive to a series of brief meetings with various individuals in Baltimore County, the DEA agents suspected Petitioner was conducting narcotics transactions. (*Id.* at 79–80.) A task force officer with the DEA requested that the BCPD conduct another traffic stop of Petitioner's vehicle. (*Id.* at 82:3–11.) On May 15, 2018, BCPD officers stopped Petitioner for driving with suspected illegal window tints. (*Id.* at 82:3–15.) Shortly after stopping Petitioner, the BCPD officers removed the front-seat passenger from the vehicle after they observed him attempt to place an item under the backseat of the vehicle. (ECF No. 118 at 68:25–69:1–4.) It took BCPD officers approximately fifteen minutes to determine that Alexander possessed a valid driver's license. (ECF No. 119 at 84:16–21.) While the stop was ongoing and as BCPD officers looked into the issue of Alexander's driver's license, a narcotics detection K-9 named Gejza

6

positively alerted several times during a scan of Petitioner's vehicle. (*Id.* at 85:5–10.) During a subsequent search of Petitioner's car, officers found and seized over $300,000 in cash stored in several bags. (*Id.* at 85:5–23; 86:13–21.) The search did not yield any drugs. (*Id.* at 73.)

At the Suppression Hearing, Gejza's handler, BCPD Officer Huter, testified about Gejza's training and certification. (ECF No. 118 at 179:5–25; 180:1–25.) Officer Huter explained that Gejza completed an initial 6-month training course before becoming certified as a narcotics detection dog in Maryland in 2012. (*Id.* at 179:12–19.) Officer Huter also testified that Gejza trained for seven hours each week following this initial certification and had earned recertification every year since 2012. (*Id.* at 180:15–23.) The Government admitted copies of Gejza's certifications, including a list of the tasks that Gejza completed to receive certification and recertification. (*Id.* at 181–182.) During his testimony, Officer Huter reviewed footage of his body-warn camera and testified about specific moments in which the footage captured Gejza's positive alerts on the vehicle. (*Id.* at 187–191.) Petitioner's defense counsel cross-examined Officer Huter about Gejza's positive alerts, Officer Huter's communications with other officers present at the traffic stop, and Gejza's training and most recent certification. (*Id.* at 195–210.)

In written submissions and during the Suppression Hearing, Petitioner's trial counsel argued that law enforcement impermissibly extended both traffic stops to allow the K-9 detection units to arrive. (ECF No. 20 at 5; ECF No. 35 at 9–15; ECF No. 119 at 86–87.) Petitioner's trial counsel raised caselaw in support of this argument and reiterated the argument

several times during the Suppression Hearing.[3] During the Suppression Hearing, this Court specifically clarified with Petitioner's counsel that the Defense's "argument is not under *Whren*. [It] is under *Rodriguez*." (ECF No. 119 at 89.)

After hearing arguments from counsel, this Court denied Petitioner's motions to suppress. (ECF No. 52.) This Court determined that reasonable suspicion of drug trafficking and driving with illegal window tints justified both traffic stops. (ECF No. 119 at 120–27.) This Court then concluded that, under *Rodriguez* and *Williams*, neither traffic stop was unduly prolonged because Petitioner's furtive movements and officers' inability to identify Petitioner justified the length of each stop. (*Id.*) Because there had been no undue delay, this Court denied Petitioner's motion to suppress evidence uncovered during the stops. (*Id.*; ECF No. 52.)

## III.    Petitioner's Sentencing and Post-Trial Developments

On January 16, 2020, this Court sentenced Petitioner to 360 months (30 years) of imprisonment for the violation of 21 U.S.C. §§ 841, 846 (Count I); 360 months (30 years) of imprisonment for the first violation of 21 U.S.C. § 841 (Count II); 360 months (30 years) of imprisonment for the second violation of 21 U.S.C. § 841 (Count III); 60 months (5 years) of imprisonment for the violation of 21 U.S.C. § 924(c) (Count IV); and 120 months (10 years) of imprisonment for the violation of 18 U.S.C. § 922(g)(1) (Count V).[4] (ECF No. 105 at 3.) This Court ordered the sentences for Count I, Count II, Count III, and Count V to run concurrently, and the sentence for Count IV to run consecutively, resulting in a total term of

---

[3] Petitioner's defense counsel raised *Rodriguez v. United States*, 575 U.S. 348 (2015); *Florida v. Royer*, 460 U.S. 491 (1983); *Illinois v. Caballes*, 543 U.S. 405 (2005); *United States v. Williams*, 808 F. 3d 238 (4th Cir. 2015); and *United States v. Branch*, 537 F. 3d 328 (4th Cir. 2008), among other caselaw, in support of this argument. (Def.'s Mot. to Suppress, ECF No. 20 at 5–6; Def.'s Suppl. Mot. to Suppress, ECF No. 35 at 9–15.)

[4] Pursuant to Section 3D1.2(d) of the Sentencing Guidelines, Counts I, II, III, and IV were grouped together with respect to their calculation.

imprisonment of 420 months (35 years), followed by a five-year term of supervised release. (*Id.*) This sentence was in accordance with the sentencing guidelines range of 360 months to life, based on an adjusted offense level of 40 and a criminal history category of III.[5] (ECF No. 113 at 20:7; 22:22; 23:6–24.) This sentence also accorded with the statutory mandatory minimum sentence of ten years of imprisonment for Counts I, II, III, and V, and the statutory minimum sentence of five years of imprisonment to run consecutive to any other sentence for Count IV.[6] (ECF No. 113 at 12:14–21.)

After sentencing, Petitioner timely filed an appeal, challenging this Court's suppression rulings as to the May 15, 2018, traffic stop. (ECF No. 103); *United States v. Alexander*, 834 F. App'x 825, 825 (4th Cir. Feb. 4, 2021). On appeal, Petitioner argued (1) the DEA agents did not provide enough information to BCPD officers to impute reasonable suspicion to perform the traffic stops under the doctrine of collective knowledge, and (2) BCPD officers lacked reasonable suspicion to justify the K-9 scan of his vehicle. *Alexander*, 834 F. App'x at 825. In an unpublished per curiam decision, the Fourth Circuit affirmed Petitioner's conviction after assuming, without deciding, that any error in this Court's suppression decision was harmless. *Id.* at 826. The Supreme Court denied Alexander's petition for *certiorari* on October 12, 2021. *Alexander v. United States*, 142 S. Ct. 351 (2021).

---

[5] Petitioner began with a base offense level of 34 based on the amount of narcotics as to which he was convicted. There was a two-level upward adjustment because of his maintenance of a premises for the purpose of manufacturing or distributing a controlled substance, a two-level upward adjustment for the aggravating role as a result of his conviction, and a two-level upward adjustment for Petitioner's role as organizer or supervisor of the drug trafficking organization. (ECF 113 at 19:19–25; 20:1–9.)

[6] 21 U.S.C. § 841(b) imposes a ten-year mandatory minimum sentence for individuals convicted of violating 21 U.S.C. § 841(a)(1). 21 U.S.C. § 924(c) mandates a term of imprisonment of at least five years. 21 U.S.C. § 924(c)(1)(A)(i).

On October 6, 2022, Alexander filed the presently pending § 2255 Motion. (ECF No. 133.) He filed his Motion for Leave to Amend his § 2255 Motion on December 14, 2022. (ECF No. 138.) The Government responded in opposition on April 25, 2023, (ECF No. 149), arguing that Petitioner's claims are either meritless or procedurally defaulted. (*Id.*) On June 14, 2023, Petitioner filed a Motion to Extend Time. (ECF No. 152.) All three pending motions are ripe for review.

## STANDARD OF REVIEW

As Petitioner has filed his Motion *pro se*, his Motion will be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). Under 28 U.S.C. § 2255, a prisoner in custody may seek to vacate, set aside or correct his sentence where: (1) "the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "the court was without jurisdiction to impose such sentence;" (3) "the sentence was in excess of the maximum authorized by law;" or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

It is well-settled that a § 2255 motion is not a means to circumvent a proper ruling on appeal. *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013). A § 2255 motion does not enable the defendant to "recast, under the guise of collateral attack, questions fully considered by [the Circuit Court on direct appeal]." *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th

Cir. 1976). Furthermore, as a general rule, "claims not raised on direct appeal may not be raised on collateral review." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Thus, a petitioner may raise novel claims only where the petitioner demonstrates both "cause" and "actual prejudice." *Bousley v. United States*, 523 U.S. 614, 622 (1998).

Conversely, any "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro*, 538 U.S. at 509. An ineffective assistance of counsel claim requires that a petitioner satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). The first, or "performance," prong of the test requires a showing that counsel's representation was deficient and fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In assessing whether counsel's performance was unconstitutionally deficient, courts adopt a "strong presumption" that counsel's actions fall within the "wide range of reasonable professional assistance." *Id.* at 688–89. Actions that fall below an objective standard of reasonableness are "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The second, or "prejudice," prong requires that defendant demonstrate that his counsel's errors deprived him of a fair trial. *Id.* To establish this level of prejudice, a petitioner must demonstrate that there is a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Satisfying either of the two parts of the test alone is not sufficient. Rather, a petitioner must meet both prongs of the Strickland test to be entitled to relief. *See id.* at 687.

## ANALYSIS

Alexander appears to advance seven arguments in support of his § 2255 Motion.[7] First, Petitioner contends that his prosecution in this case violated the Ninth and Tenth Amendments to the United States Constitution. Second, Petitioner argues that his trial counsel was constitutionally ineffective for failing to investigate and secure witnesses favorable to Petitioner at the Suppression Hearing and trial. Third, Petitioner asserts that his trial counsel was constitutionally ineffective for failing to argue that his conviction under 21 U.S.C. §§ 841 and 846 required a heightened showing of scienter as to drug quantity and type. Fourth, Petitioner argues that his counsel was constitutionally ineffective for failing to argue that his conviction for violation of 18 U.S.C. § 924(c), Count IV, should be vacated because the Superseding Indictment, (ECF No. 26), failed to state a federal crime. Fifth, Petitioner contends that his trial counsel was constitutionally ineffective at the motion to suppress stage both for failing to argue that officers impermissibly prolonged a traffic stop under *Rodriguez v. United States* and for failing to investigate the drug detection K-9's qualifications. Sixth, Petitioner asserts that after the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), the Commerce Clause does not authorize Congress to pass laws regulating the illegal distribution of controlled substances. Lastly, Petitioner argues that his conviction for violation of 18 U.S.C. § 922(g), Count V, should be vacated because 18 U.S.C. § 922(g) is unconstitutional after the Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022).

As explained below, this Court concludes that Alexander's arguments wholly lack merit. As an initial matter, Alexander's claims that his prosecution in this case violated the

Ninth and Tenth Amendments, that the Commerce Clause bars federal regulation of illegal distribution of controlled substances, and that *Bruen* makes 18 U.S.C. § 922(g) unconstitutional are all procedurally barred because he did not raise them at trial or on appeal. Alexander's remaining ineffective assistance of counsel claims fail because he fails to show that his counsel was ineffective under the *Strickland* standard.

### A. Procedurally Barred Claims

As noted above, it is well-settled that a § 2255 motion is not a vehicle to circumvent a proper ruling on appeal, *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013), and a defendant will not "be allowed to recast, under the guise of collateral attack, questions fully considered by [the Circuit Court on direct appeal]." *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) (citing *Herman v. United States*, 227 F.2d 332 (4th Cir. 1955)).

Additionally, if a defendant waives an issue by failing to raise it on direct appeal and then later attempts to raise it as a collateral attack, that motion is procedurally barred. *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 622 (1998). An exception to this rule applies where a petitioner demonstrates both "cause" and "actual prejudice," *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Wainwright v. Sykes*, 443 U.S. 72, 87 (1977), or where a petitioner can demonstrate that he is "actually innocent." *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010); *see Dretke v. Haley*, 541 U.S. 386, 393, (2004); *Reed v. Farley*, 512 U.S. 339, (1994); *United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1999). Also, "questions of sufficiency of evidence are not reviewable in a § 2255 proceeding." *Epps*

---

[7] As noted above, this Court considers the arguments Alexander advances in his § 2255 Motion (ECF No. 133) and in his subsequent Motion for Leave to Supplement (ECF No. 138) in tandem.

*v. United States*, 728 F. Supp. 1236, 1239 (D. Md. 1990) *aff'd sub nom.*

Alexander alleges, for the first time, three new claims in his § 2255 motion: (1) his prosecution violated the Ninth and Tenth Amendments; (2) based on the Supreme Court's decision in *Dobbs*, the Commerce Clause does not authorize the federal government to criminalize drug distribution in the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*; and (3) after the Supreme Court's holding in *Bruen*, 21 U.S.C. § 922(g) is unconstitutional. Where a petitioner has procedurally defaulted a claim by failing to raise it on appeal, the claim may be raised on collateral review only if the defendant can first demonstrate "cause" and actual "prejudice," *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), or that he is "actually innocent," *Murray*, 477 U.S. at 496; *Smith v. Murray*, 477 U.S. 527, 537 (1986).

Here, Alexander has failed to show cause and actual prejudice, or actual innocence, that would justify hearing his claims for the first time on collateral review. First, this Court and the Fourth Circuit have repeatedly rejected claims that the Ninth and Tenth Amendments preclude federal regulation of controlled substances under 21 U.S.C. §§ 841 and 846. *See United States v. Yates*, 746 F. App'x 162, 164 (4th Cir. 2018) (per curiam) (holding the Tenth Amendment "does not prohibit the federal government from restricting marijuana use" under 21 U.S.C. § 841); *Brooks v. United States*, No. WDQ-09-0288, 2013 WL 1497458, at *1 (D. Md. Apr. 9, 2013) (holding convictions under 21 U.S.C. §§ 841 and 846 constitutional despite defendant's Ninth and Tenth Amendment challenges because "21 U.S.C. §§ 841 and 846 are valid exercises of Congress's enumerated powers"); *United States v. Fry*, 787 F.2d 903, 905 (4th Cir. 1986) (holding convictions under 21 U.S.C. §§ 841 and 846 constitutional despite a Ninth

Amendment challenge because there is "no fundamental right to produce or distribute [controlled substances] commercially").

Second, as the Government correctly notes, Alexander's claim that *Dobbs* strips Congress of its authority to criminalize drug distribution misconstrues the holding of *Dobbs*. In *Gonzales v. Raich*, 545 U.S. 1 (2005), the Supreme Court held that Congress properly enacted the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, pursuant to its powers under the Commerce Clause. *Raich*, 545 U.S. at 9, 19. Contrary to Alexander's assertion, *Dobbs* had no effect on the Court's holding in *Raich*. In *Dobbs*, the Supreme Court held that there is no constitutional right to abortion and, as such, states possess the power to regulate abortion. 142 S. Ct. 2228, 2242–43 (2022). The Court's holding in *Dobbs* overruled *Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), but left *Gonzales v. Raich* unaltered.

Lastly, Alexander's argument that his 18 U.S.C. § 922(g) conviction is unconstitutional following the Supreme Court's holding in *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), is also unavailing. Because the Supreme Court decided *Bruen* after Alexander's appeal, he can show "cause" to justify raising the claim for the first time on collateral review.[8] *See Carrier*, 477 U.S. at 485 (1986). However, Alexander still fails to show the "actual prejudice" required to hear a claim or the first time on collateral review. *See id.* at 494 ("The habeas petitioner must show 'not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire

---

[8] This Court sentenced Alexander on January 16, 2020, (ECF No. 105), and the Fourth Circuit denied his appeal on February 4, 2021, *Alexander*, 834 F. App'x at 825.

trial with error of constitutional dimensions." (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982))). Here, Alexander cannot show that he experienced "*actual* and substantial disadvantage" because his *Bruen* claim entirely lacks merit. *Frady*, 456 U.S. at 170.

This Court does not agree that *Bruen*—which applied to law-abiding citizens in possession of a weapon—called into question the constitutionality of § 922(g)(1). The Supreme Court has repeatedly emphasized that felon in possession prohibitions do not violate the Second Amendment. In *District of Columbia v. Heller*, 544 U.S. 570 (2008), the Supreme Court recognized that the Second Amendment codified a pre-existing "right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense," *Bruen*, 142 S. Ct. at 2122 (citing *Heller*, 544 U.S. 570), cautioning that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ." *Heller*, 544 U.S. at 626. The Supreme Court reiterated this point in *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010). In *Bruen*, the Supreme Court noted that the petitioners were "ordinary, law-abiding adult citizens," making them "part of 'the people' whom the Second Amendment protects." 142 S. Ct. at 2119.

This Court acknowledges that since the holding in *Bruen*, a circuit split has arisen regarding the constitutionality of § 922(g)(1). This circuit split hinges on whether convicted felons fall within the scope of "the people" protected by the Second Amendment. Although the Fourth Circuit has not considered this issue, the Fifth, Tenth, and Eighth Circuits have held that, under *Heller, McDonald*, and *Bruen*, convicted felons are not within the class of persons contemplated by the Second Amendment and, therefore, § 922(g)(1) is constitutional. *See Vincent*, 80 F.4th at 1201–1202 (upholding the constitutionality of defendant's conviction

under § 922(g)(1)); *Jackson*, 69 F. 4th at 505 (accord); *Hickox*, No. 22–50365, 2023 WL 3075054, at *1 (declining to overturn defendant's conviction under § 922(g)(1) because "it is not clear that *Bruen* dictates such a result"). The Third Circuit, however, held § 922(g)(1) unconstitutional as applied to a defendant whose underlying felony conviction consisted of making false statements to obtain food stamps in violation of Pennsylvania law. *Range v. Att'y Gen. United States of America*, 69 F. 4th 96, 98, 106 (3d Cir. 2023). Even so, the Third Circuit emphasized the narrowness of its opinion, noting it held § 922(g)(1) unconstitutional only *as applied* in that case.

While the Fourth Circuit has not yet had an opportunity to address the constitutionality of § 922(g)(1) post-*Bruen*, it previously recognized that the Second Amendment has always been a right afforded only to law-abiding citizens. *See United States v. Carter*, 669 F.3d 411, 415 (4th Cir. 2012) (declining to find § 922(g)(3) unconstitutional on its face explaining "[t]he weight of the right to keep and bear arms depends not only on the purpose for which it is exercised but also on relevant characteristics of the person invoking the right"). District courts across this Circuit have unanimously held that § 922(g)(1) does not violate the second amendment post-*Bruen*. *See Cusick v. United States*, No. TDC-22-1611, 2023 WL 5353170, at *5 (D. Md. Aug. 18, 2023) ("[T]he conduct covered by 18 U.S.C. § 922(g)(1) is outside the scope of right covered by the Second Amendment under *Heller, McDonald*, and *Bruen*."); *see also United States v. Jackson*, No. ELH-22-0141, 2023 WL 2499856, at *7 (D. Md. Mar. 13, 2023) (collecting cases that distinguish convicted felons under § 922(g) from "the people" protected by the Second Amendment after *Bruen*), *United States v. Moore*, 666 F. 3d 313, 318 (4th Cir. 2012) (rejecting post-*Heller* challenge to § 922(g)(1)); *see, e.g., Antione v. United States*, No. 1:18CR17,

2023 WL 5573805 (N.D.W. Va. Aug. 29, 2023); *United States v. Manns*, No. 5:22-CR-00066, 2023 WL 3121230 (S.D.W. Va. Apr. 27, 2023); *United States v. Dawson*, No. 3:21-CR-00293-RJC-DCK, 2022 WL 17839807 (W.D.N.C. Dec. 21, 2022); *United States v. Spencer*, No. 2:22-CR-106, 2022 WL 17585782 (E.D. Va. Dec. 12, 2022); *United States v. Wagoner*, No. 4:20-CR-00018, 2022 WL 17418000 (W.D. Va. Dec. 5, 2022); *United States v. Burton*, No. CR 3:22-362-MGL-1, 2022 WL 16541139 (D.S.C. Oct. 28, 2022).

Here, Alexander is a convicted felon with a criminal history category of III. This criminal history category accounted for Alexander's 2006 felony narcotics trafficking conviction in California for which he was sentenced to nine years of imprisonment. (ECF No. 113, 22:1–4; Presentencing Report, ECF No. 97 at 11.) At the time of his arrest in the instant case, Alexander remained on parole for the California conviction. (ECF No. 97 at 11–12; ECF No. 113 at 46.) Given Alexander's underlying felony conviction, it is clear that he is not an ordinary, law-abiding citizen and is not part of "the people" whom the Second Amendment protects. As such, he is not entitled to possess a firearm, and § 922(g) is not unconstitutional as applied to him.

### B. Claims of Ineffective Assistance of Counsel

A freestanding claim of ineffective assistance of counsel may properly be asserted for the first time in a § 2255 petition. *United States v. DeFusco*, 949 F.2d 114, 120–21 (4th Cir. 1991). As noted, to successfully challenge a sentence of imprisonment under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). First, the petitioner must show that counsel's performance was not "within the range of competence

normally demanded of attorneys in criminal cases," and was "below an objective standard of reasonableness," measured by "prevailing professional norms." *Id.* "Keenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence v. Branker*, 517 F.3d 700, 708 (4th Cir. 2008) (quoting *Strickland*, 466 U.S. at 689).

Second, the petitioner must show that counsel's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 697; see *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (stating that, under the second prong, the petitioner must prove that the "result of the proceeding was fundamentally unfair or unreliable"). A court may determine whether prejudice has been shown before judging counsel's conduct for deficiencies. Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Strickland*, 466 U.S. at 670.

Here, Alexander is not entitled to habeas relief based on his ineffective assistance of counsel claims. His claims—many of which plainly contradict the record—cannot overcome the "'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Yarbrough v. Johnson*, 520 F.3d 329, 337 (4th Cir. 2008) (quoting *Strickland*, 466 U.S. at 689). Put another way, Alexander is unable to demonstrate that his counsel's performance was deficient, and he has failed to show prejudice.

1.  **Failure to Investigate and Secure Witnesses Favorable to Petitioner**

In his § 2255 Motion, Alexander contends that his attorney failed to secure favorable witnesses to testify on his behalf during his suppression hearing and trial. A habeas petition "is expected to state facts that point to a real possibility of constitutional error." *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977). Thus, "'vague and conclusory allegations contained in a § 2255 motion may be disposed without further investigation by the District Court.'" *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013) (quoting *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000)). Moreover, defense counsel has "wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions . . . is particularly important because of the broad range of legitimate defense strategy" available. *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003); *see also United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 1977) ("The decision whether to call a defense witness is a strategic decision demanding the assessment and balancing of perceived benefits against perceived risks, and one to which '[w]e must afford . . . enormous deference.'" (quoting *United States v. Kozinski*, 16 F.3d 795, 813 (7th Cir. 1994))). Decisions regarding whether to call witnesses or which witnesses to call are "classic tactical decision[s] left to counsel . . . even when the client disagrees." *Byers v. United States*, No. CR RDB-08-0056, 2015 WL 5450179, at *7 (D. Md. Sept. 16, 2015); *see also Fuertes v. United States*, No. CR RDB-10-0770, 2017 WL 2461931, at *3 (D. Md. June 7, 2017) (noting the decision to call witnesses falls within the tactical discretion of counsel).

Here, Alexander does not provide any factual support for his claim that defense counsel failed to provide constitutionally effective assistance by failing to call witnesses.[9] The Government aptly characterizes Alexander's claims as "vague and conclusory" because

Alexander fails to identify a single witness whom he believed would have testified on his behalf. Additionally, Alexander fails to describe how such witnesses' testimony would have produced a different outcome at the suppression hearing or at trial. This vague and conclusory claim needs no further investigation. Alexander has failed to show prejudice, and this claim must be denied. *Strickland*, 466 U.S. at 694.

## 2. Failure to Argue that Conviction Required a Heightened Showing of Scienter as to Drug Quantity and Type Under 21 U.S.C. §§ 841, 846

Next, Petitioner incorrectly asserts that his trial counsel was ineffective for failing to argue that Petitioner could not be convicted under 21 U.S.C. §§ 841 and 846 because he lacked specific knowledge of the type and quantity of controlled substances he trafficked.[10] As the Supreme Court has observed, conviction under 21 U.S.C. § 841 requires the government to show "the defendant knew he possessed a substance listed on the [federal drug] schedules, even if he did not know which substance it was." *McFadden v. United States*, 576 U.S. 186, 192 (2015); *see also United States v. Ali*, 735 F.3d 176, 186 (4th Cir. 2013) ("[T]he law is settled that a defendant need not know the exact nature of a drug in his possession to violate § 841(a)(1); it is sufficient that he [or she] be aware that he [or she] possesses *some controlled substance*.") (quoting *United States v. Abdulle*, 564 F.3d 119, 125–26 (2d Cir. 2009)) (alterations in original)).

---

[9] Alexander also cites to several cases in other jurisdictions in which prosecutors failed to meet their *Brady* obligations, speculating that the Government must have similarly withheld exculpatory evidence in his case. However, he does not identify a single piece of evidence he believes was withheld. As such, this Court need not further address his vague and conclusory allegations.

[10] Petitioner supports this assertion by relying on *Ruan v. United States*, 142 S. Ct. 2370 (2022), in which the Supreme Court considered the conviction of two medical doctors under 21 U.S.C. § 841. In *Ruan*, the Court held that once the defendant has proven that his conduct was authorized because he was a medical doctor, "the Government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner." 142 S. Ct. at 2376. Because Petitioner was not a medical doctor at the time of his conviction, this holding does not affect the *mens rea* standard in his case. For this reason, this Court rejects Petitioner's argument under *Ruan*.

Case 1:22-cv-02577-RDB   Document 2   Filed 10/17/23   Page 22 of 27


At trial, this Court instructed the jury that conviction under § 841 required them to find that Alexander knowingly or intentionally distributed or possessed with intent to distribute a controlled substance, and conviction under § 846 required them to find that Alexander willfully became a member of the conspiracy. Because this instruction correctly identifies the *mens rea* required to find conviction under 21 U.S.C. §§ 841 and 846, Alexander cannot show the prejudice required for a successful ineffective assistance of counsel claim under *Strickland*. Thus, this claim must be denied.

### 3. Failure to Argue that Petitioner's Conviction for Violation of 18 U.S.C. § 924(c) Should Be Vacated Because the Superseding Indictment Failed to State a Federal Crime

Alexander also contends that his trial counsel was ineffective for failing to argue that the Government's charging language in Count IV, violation of 18 U.S.C. § 924(c), of the Superseding Indictment incorrectly combined elements of two distinct crimes, thus failing to charge Alexander with a federal crime.[11] (ECF No. 133 at 57–61.) As discussed above, the first prong of *Strickland* requires a Petitioner to show that counsel's representation fell "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In reviewing counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. As the Fourth Circuit has recognized, counsel need only raise material arguments regarding unsettled law "'if there is

---

[11] Specifically, the Superseding Indictment charged:

> On or about January 2, 2019, in the District of Maryland, the defendant . . . did knowingly possess a firearm, to wit: one Glock 23 pistol bearing serial number BDZ372, in relation to a trafficking crime for which he may be prosecuted in a court of the United States, that is the offense charged in Count One of this Superseding Indictment.

(ECF No. 26.) To the extent that Alexander seeks to challenge the charging language outside of his ineffective assistance of counsel claim, such a challenge is procedurally barred because he failed to raise this issue before this Court or on direct appeal.

relevant authority strongly suggesting' that it is warranted." *United States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019) (quoting *United States v. Carthorne*, 878 F.3d 458, 466 (4th Cir. 2017)); *see also McCalla v. United States*, No. RWT-06-0404, 2023 WL 3385458, at * 3 (D. Md. Aug. 26, 2010) (rejecting petitioner's ineffective assistance of counsel claim where trial counsel's interpretation was reasonable, a circuit split existed on the issue, and there was no binding Fourth Circuit precedent); *United States v. Glover*, 872 F. 3d 625, 631 (D.C. Cir. 2017) (rejecting an ineffective assistance of counsel claim because counsel is "not ineffective for failing to raise a challenge of uncertain merit based on unsettled law"). Here, Alexander's claim cannot overcome the "'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Yarbrough v. Johnson*, 520 F.3d 329, 337 (4th Cir. 2008) (quoting *Strickland*, 466 U.S. at 689).

As the Government correctly notes, the appropriate charging language under 18 U.S.C. § 924(c) remained unsettled law at the time of Alexander's trial.[12] By the time of Alexander's arrest, the Fourth Circuit had recognized the existence of a circuit split regarding whether 18 U.S.C. § 924(c) creates two separate criminal offenses or one single criminal offense. *United States v. King*, 628 F.3d 693 (4th Cir. 2011) ("[O]ur sister circuits disagree on whether an indictment's mixing of the elements of 924(c)'s 'use and carry' and 'possession' prong constitutes reversible error."). Yet, the Fourth Circuit has never itself decided whether § 924(c) criminalizes two separate offenses. Absent binding Fourth Circuit precedent and given the

---

[12] Under 18 U.S.C. § 924(c)(1), "any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . . be sentenced to a term of imprisonment the not less than 5 years . . . ."

existing circuit split regarding the appropriate charging language under § 924(c), Alexander's trial counsel did not engage in performance so unreasonable as to be deficient under the first prong of the *Strickland* standard for ineffective assistance of counsel.

Moreover, even if Alexander's trial counsel did act unreasonably in failing to challenge the indictment, Alexander has not shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 697. The uncertain state of the law at the time of Alexander's trial diminishes his ability to show that challenging the indictment's language would have been successful. On plain error review in *King*, the Fourth Circuit cited the lack of controlling precedent when it denied a similar claim for relief where an indictment omitted Section 924(c)'s "in furtherance of" language. *King*, 628 F. 3d at 700. Therefore, Alexander fails to demonstrate the deficient performance and prejudice required to raise a successful ineffective assistance of counsel claim under *Strickland.*

### 4. Failure to Argue that Officers Impermissibly Prolonged the Traffic Stop Under *Rodriguez v. United States* and Failure to Investigate the Drug Detection K-9's Qualifications

Finally, Alexander inaccurately alleges that his trial counsel was ineffective for failing to argue that officers impermissibly prolonged the May 15 traffic stop under *Rodriguez* and failing to investigate the narcotics detection K-9's credentials.[13] As this Court has recognized, "tactical decisions such as what questions to ask of witnesses are 'virtually unchallengeable'" in a collateral habeas proceeding. *Mosley v. United States*, No. DKC-07-1520, 2011 WL 1230888,

---

[13] Alexander does not identify the traffic stop to which he refers by its date. This Court construes his motion as discussing the May 15 traffic stop, however, because he discusses Officer Huter and K-9 officer Gejza, who were present only at the May 15 traffic stop. (ECF No. 133 at 65.)

at *2 (D. Md. Mar. 29, 2011) (quoting *Powell v. Kelly*, 562 F.3d 656, 670 (4th Cir. 2009)); *see also Young v. United States*, ELH-13-0151, 2019 WL 6729824, at *10 (D. Md. Dec. 10, 2019) ("Notably, 'decisions regarding trial tactics and strategy, such as . . . whether and how to cross-examine a witness . . . are the exclusive province of the attorney . . . a claim of ineffective assistance of counsel does not open the flood gates to second guessing the tactics of trial lawyers.'" (quoting *Harford v. Angelone*, 244 F. Supp. 2d 606, 613 (E.D. Va. 2002))). A review of the record reveals that Alexander's counsel closely litigated the duration of the traffic stop under *Rodriguez* and cross-examined the relevant BCPD officer about the narcotics detection K-9's credentials.

Alexander's claims are plainly contradicted by a review of the record. In both written submissions and during Alexander's suppression hearing, Alexander's counsel argued that law enforcement officers had violated *Rodriguez* by unlawfully prolonging both traffic stops to permit the narcotics detection unit to arrive.[14] (Def. Supp. Motion to Suppress, ECF No. 20 at 5–6; Suppression Hearing Tr., ECF No. 118 at 213, 215; ECF No. 119 at 73–75, 87, 91, 95, 145.) This Court rejected these arguments as to both stops because law enforcement had reasonable suspicion to believe Alexander was engaged in narcotics trafficking activity, and any delay was justified by furtive movements from a passenger in the car and law enforcement's inability to identify Alexander during the stops. On direct appeal, the Fourth Circuit rejected Alexander's arguments about the validity of the May 15, 2018, traffic stop and

---

[14] In Alexander's Supplemental Motion to Suppress, Alexander's trial counsel raised caselaw regarding the appropriate duration of a traffic stop, including, among others: *Rodriguez*, *Florida v. Royer*, 460 U.S. 491 (1983); *Illinois v. Caballes*, 543 U.S. 405 (2005); *United States v. Williams*, 808 F.3d 328 (4th Cir. 2015), and *United States v. Branch*, 537 F.3d 328 (4th Cir. 2008). (ECF No. 20 at 5–6.)

affirmed his conviction. *See Alexander*, 834 F. App'x at 826 (assuming, without deciding, that even if this Court erred by admitting evidence from the traffic stop, any error was harmless).

As the Government correctly notes, a review of the record similarly contradicts Alexander's assertion that his trial counsel failed to investigate the K-9 officer's credentials. During the suppression hearing, Officer Huter, the narcotics detection officer present at the May 15 stop, testified in detail about the K-9 officer's certification, training, and qualifications. Alexander's counsel then cross-examined Officer Huter about the K-9 officer's alerts, the K-9 officer's most recent certification, and the controlled substances the K-9 officer was trained to detect. (Suppression Hearing Tr., ECF No. 39 at 209.) The foregoing makes clear that, contrary to Alexander's claims, Alexander's counsel challenged to the duration of the traffic stop under *Rodriguez* and questioned law enforcement about the qualifications of the narcotics detection K-9. As such, Alexander cannot demonstrate deficient performance under *Strickland* and this claim fails. 466 U.S. at 687–88.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Petitioner's Motion to Extend Time (ECF No. 152) is **GRANTED;** Petiitioner's Motion for Leave to Amend (ECF No. 138) is **DENIED AS MOOT**; and Petitioner's Motion to Vacate, Set Aside, or Correct sentence, pursuant to 28 U.S.C. § 2255 (ECF No. 133) is **DENIED**.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the Court is required to issue or deny a Certificate of Appealability when it enters a final order adverse to the applicant. *See Jackson v. United States*, No. PJM-12-421, 2012 WL 869080, at *1 (D. Md. Mar. 13, 2012). "A Certificate of Appealability may issue . . . only if the applicant has

made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies petitioner's motion on its merits, the petitioner "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003) (quoting *Barefoot v. Estelle*, 463, U.S. 880, 893 n.4 (1983)).

Alexander has not made a substantial showing of the denial of a constitutional right. Even if this Court's determination that Petitioner's *Bruen* claim is procedurally barred were debatable, Alexander used the firearm in connection to his crimes of conviction and remained on parole for the underlying felony at the time of his conviction in this case. He has not made a substantial showing that his constitutional right was abrogated because he was not a law-abiding citizen using a firearm for ordinary self-defense. *Bruen*, 142 S. Ct. at 2156. Alexander's *Bruen* argument thus is not "sufficiently adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 335–36. Because Alexander's motion provides no basis for issuance of a Certificate of Appealability, a Certificate of Appealability is DENIED.

A separate Order follows.

Dated: October 17th, 2023

_____/s/_____
Richard D. Bennett
United States District Judge